**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
KATHIE SINISGALLO, STEVE
TSILIMPARIS,

                        Plaintiffs,               **MEMORANDUM OF**
                                                      **DECISION AND ORDER**
              -against-                   12-CV-1733(ADS)(AKT)

TOWN OF ISLIP HOUSING AUTHORITY,
RICHARD WANKEL, in his capacity as
Executive Director of The Town of Islip
Housing Authority, PAUL E. LEVITT, in his
capacity as Hearing Officer,

                        Defendants.
--------------------------------------------------------X
<u>**APPEARANCES:**</u>

**Nassau/Suffolk Law Services Committee Inc.**
*Attorneys for the plaintiffs*
1757 Veterans Highway, Suite 50
Islandia, NY 11749
      By: Darlene Rosch, Esq., Of Counsel

**William R. Garbarino, Esq.**
*Attorneys for the Town of Islip Housing Authority and Richard Wankel*
40 Main Street
P.O. Box 717
Sayville, New York 11782

**SPATT, District Judge**.

      The Plaintiffs, Kathie Sinisgallo ("Sinisgallo") and Steve Tsilimparis ("Tsilimparis")

bring this action against the Defendants Town of Islip Housing Authority ("IHA"), Richard

Wankel, and Paul E. Levitt, alleging that the Defendants terminated their tenancy in public

housing in violation of their constitutional due process rights; United States Housing Act, 42

U.S.C § 1437d(k); Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29

U.S.C. § 794, the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act

1

(the "FHA"), 42 U.S.C. § 3601 et seq.; and Title II of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12131 et seq.  Presently before the Court is the Plaintiffs' motion for a preliminary injunction.  For the reasons set forth below, the Plaintiffs' motion is granted.

## I.  BACKGROUND

The defendant Town of Islip Housing Authority is a municipal housing authority, created in accordance with the provisions of the New York State Public Housing Law.  The IHA is categorized as a public housing authority ("PHA") under the United States Department of Housing and Urban Development ("HUD") regulations.  Pursuant to HUD regulations, the IHA maintains a public housing program ("the Program"), through which it provides housing for eligible families, including low income families and families with elderly and disabled individuals.  The defendant Richard Wankel is the Executive Director in charge of the Program for the IHA.

On June 10, 2010, the plaintiffs, Kathie Sinisgallo and Steve Tsilimparis, entered into a lease for public housing provided by the IHA located at 81 Mill Pond Lane, Bay Shore, New York.  On the lease, Sinisgallo is identified as the "tenant" and Tsilimparis is identified as a "co-tenant".  Both Sinisgallo and Tsilimparis assert that they are mentally disabled individuals.  Sinisgallo contends that she suffers from paranoid schizophrenia; receives psychiatric treatment for her illness from the Hands Across Long Island Personal Recovery Program; and that her income consists of Social Security Disability Insurance ("SSDI") payments because she is permanently disabled.  According to Tsilimparis, he suffers from bipolar disorder; receives psychiatric care for his illness from the Family Service League's South Shore Family Center Clinic; and his income consists of Supplemental Security Income ("SSI") payments because he is permanently disabled.  Although not married, the Plaintiffs have been engaged in a romantic

relationship for more than thirty years and have lived together continuously for that period.  The

Plaintiffs described their relationship as one that is "[s]imilar to a spousal relationship".

(Compl., ¶ 3.)

 On or about May 23, 2011, Sinisgallo submitted a complaint to defendant Richard

Wankel's office, stating that her neighboring tenant, Michael Collins, shot the Plaintiffs' pet cat

with his BB gun and injured the cat superficially.  Subsequently, on May 26, 2011, Tsilimparis

confronted Collins while Collins was spraying the grass in front of the Plaintiffs' apartment.  The

culmination of this interaction resulted in Tsilimparis physically striking Collins.

On July 13, 2011, Collins filed a complaint with the Suffolk County Police Department

regarding the May 26, 2011 altercation.  The criminal violation was Adjourned in Contemplation

of Dismissal, pursuant to New York Criminal Procedure Law § 170.55.

On May 27, 2011, Sinisgallo received a notice from the IHA terminating her tenancy and

participation in the Program.  On June 15, 2011, Sinisgallo requested an informal settlement

telephone conference to review the determination to terminate her residency.  This conference

was held between Sinisgallo and Wankel.  In this informal hearing, Sinisgallo was not

represented by counsel, and argued that her tenancy should not be terminated because

Tsilimparis struck Collins in self-defense.  On August 1, 2011, Sinisgallo received a Summary

Decision and termination notice, which stated that the IHA had determined to continue the

eviction process.  (Compl., Ex. B.)  Consistent with IHA procedures, Sinisgallo made a written

request for a formal administrative hearing, which was granted.

The administrative hearing to review the termination of the Plaintiff's tenancy was held

over two sessions on December 20, 2011 and January 9, 2012.  These proceedings were presided

over by defendant Paul E. Levitt, a private attorney who was acting in his capacity as a the

Hearing Officer.

At the hearing, Levitt heard the testimony of Collins, Wankel, Sinisgallo, Tsilimparis,

and Lillian Barnes, a neighbor who witnessed the altercation. The Plaintiffs were represented by

counsel and had an opportunity to cross-examine witnesses, present evidence, and submit post-

hearing written briefs. At the hearing, the Plaintiffs argued that they were disabled individuals

and that Tsilimparis's conduct was caused by his disability. In support of this contention, the

Plaintiffs submitted a letter dated September 26, 2011 from Meredith Braddock, Licensed Master

Social Worker ("LMSW") to the Nassau Suffolk Law Services, stating as follows:

> Mr. Tsilimparis has been a client at our South Shore Family Center
> Clinic since 9/08. Mr. Tsilimparis is being treated for Bipolar
> Disorder. On 5/27/11 Mr. Tsilimparis' medication was adjusted
> and therapy was intensified due to present symptoms. He is now
> being seen for weekly individual therapy with Licensed Master
> Social Worker and monthly medication management with our
> Psychiatrist. He is being treated with Symbyax, Tegretol and
> Clonazepam. . . . .

(Compl., Ex. C.) According to the Plaintiffs, during the hearing, they requested a reasonable

accommodation based on their various disabilities, which they contend would have permitted

them to continue to participate in the Program. In particular, they sought a probationary period

during which a further determination could be made that the change to Tsilimparis's medical

treatment would continue to prevent a recurrence of his violent behavior towards Collins or other

tenants.

Following the hearing, counsel for both sides submitted written memoranda. (Compl.,

Ex. E.) The Plaintiffs' submission primarily argued that the IHA's decision to terminate their

tenancy violated the FHA because they were disabled individuals and therefore entitled to a

reasonable accommodation. In addition to other exhibits, the Plaintiffs attached to their

submission the Joint Statement of the Department of Housing and Urban Development and the

Department of Justice, Reasonable Accommodations Under the Fair Housing Act 14 (May 17,

2004) ("Joint Statement").  (Compl., Ex. E at Ex. A.)  For its part, the IHA argued that it was not

required to offer a reasonable accommodation to a tenant that engages in illegal behavior, or, in

the alternative, that no reasonable accommodation existed that would eliminate the threat posed

by Tsilimparis to the other tenants.  Finally, the Plaintiffs submitted a supplemental letter on

January 27, 2012, arguing that the empirical evidence indicated that the attack was an isolated

incident insofar as, since the changes to Tsilimparis's medication, no further incident had

occurred despite continued provocation by Collins.  (Compl., Ex. F.)  In this letter submission,

the Plaintiffs reiterated their request for a reasonable accommodation and that the termination of

their tenancy be rescinded pursuant to the FHA.  (Id.)

On March 1, 2012, Levitt issued a decision finding that Sinisgallo had violated lease

provision paragraphs XIV(a)(7) and IX(k)(L)(1) ("the Decision").  (Compl., Ex. D.)  In the

Decision, after summarizing the testimony, Levitt stated that, based on "the evidence presented

at the hearing and the post-hearing arguments", he found that "Steven Tsilimparis did strike

Michael Collins with his fist causing injury and bleeding to Collins' left eye on or about May 26,

2011."  (Decision at 4.)  As a result, Levitt held:

> I find that since Sinisgallo violated lease provision paragraph
> XIV(a)(7) which provides that a lease may be terminated for
> serious or repeated violations such as criminal activity by tenant,
> household member, guest or other person under tenant's control.
> Tsilimparis struck Michael Collins with his fist causing injury and
> bleeding to Collins' left eye and nose.  This was unprovoked
> activity and was not in self-defense.  Tsilimparis threatened the
> health, safety, and right to peaceful enjoyment of the public
> housing premises by Collins, a resident of the same project.  I also
> find that Sinisgallo and Tsilimparis violated the "Tenant's
> Obligations", more specifically, paragraph IX(k)(L)(1).

5

(Decision at 7.)  Although Levitt discussed the credibility of the various witnesses with respect to the incident, absent from the Decision was any reference to the Plaintiffs' request for a reasonable accommodation or the allegation that the termination of their tenancy violated the FHA.  In addition, while Levitt referenced the existence of the letter from Social Worker Braddock regarding Tsilimparis's disability and treatment, he did not explain whether or to what extent it affected his decision.

Thereafter, the IHA commenced a summary holdover proceeding in the Fifth District Court of Suffolk County, Index Number ISLT 12-588, to enforce the eviction of the Plaintiffs ("the eviction proceedings" or the "summary holdover proceeding").

On April 4, 2012, the Plaintiffs commenced the present lawsuit asserting five causes of action as against all of the Defendants, alleging that:  (1) the Defendants' policies and practices of denying requests for reasonable accommodations made by persons with disabilities constitutes discrimination against persons with disabilities in violation of the ADA, FHA, and Rehabilitation Act, and (2) by failing to provide a reasonable accommodation for Tsilimparis's disability, the Defendants' termination of their participation in the Program violated the FHA, ADA, and Rehabilitation Act.  In addition the Plaintiffs assert claims for relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that the Defendants:  (1) deprived them of their Fourteenth Amendment right to due process by failing to provide them with an impartial hearing officer and (2) acted under color of law, custom or policy in the administration of their duties to deprive the Plaintiffs of their rights under the ADA, FHA, Rehabilitation Act, and United States Housing Act, 42 U.S.C. § 1437d(k).  The Plaintiffs filed an application for a temporary restraining order and a preliminary injunction, along with their summons and complaint.

Because the Plaintiffs seek to have this Court enjoin a state court proceeding, the Court directed the parties to submit supplemental briefing addressing whether:  (1) the Anti-Injunction Act precluded the Court from enjoining the eviction proceeding, and (2) Younger abstention warranted the dismissal of the complaint.  Thereafter, on April 11, 2012, the Court held a hearing.  At the conclusion of the hearing, the IHA agreed to voluntarily stay the eviction proceeding until April 26, 2012.  On April 23, 2012, at the request of the Court, the IHA agreed to an extension of the voluntary stay until May 10, 2012.  Finally, on May 10, 2012, the IHA agreed to an additional voluntary stay of the eviction proceeding until May 24, 2012.  As a practical matter, based on the calendar of the Suffolk County district court, under the current extension, the earliest date the eviction proceeding would recommence would be May 31, 2012.

As set forth below, the Court finds that neither the Anti-Injunction Act, nor Younger abstention prevent the Court from enjoining the state court eviction proceeding.  Furthermore, while the Court finds that the Plaintiffs are not entitled to injunctive relief on their claims asserted pursuant to Section 1983, the Court finds that the Plaintiffs' have met the requisite standard for obtaining preliminary injunctive relief based on their claim that the IHA violated their rights under the FHA, ADA, and Rehabilitation Act claims ("the federal disability claims").

## II.  DISCUSSION

## A.  Whether the Younger Abstention Doctrine and the Anti-Injunction Act Preclude Preliminary Relief

The threshold issue before this Court is whether the Anti-Injunction Act or the Younger abstention doctrine preclude the Court from granting the Plaintiffs the preliminary injunctive relief they seek.

As an initial matter, the Court notes that neither party, either in their written submissions or at the hearing, addressed the impact of the Plaintiffs' claims pursuant to Section 1983 on the Court's Anti-Injunction Act and <u>Younger</u> abstention analysis. However, because the Court ultimately finds that the Plaintiffs do not show a sufficient likelihood of success on the merits of their Section 1983 claims to warrant a preliminary injunction, the Court, like the parties, focuses its analysis exclusively on the Plaintiffs' claims under the federal disability statutes.

The federal Anti-Injunction Act provides that "[a] Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This Act presents an absolute ban on enjoining any state court proceeding, unless the facts of the case bring the matter within one of the three narrowly construed exceptions. <u>Vendo Co. v. Lektro-Vend Corp.</u>, 433 U.S. 623, 630, 97 S. Ct. 2881, 2887, 53 L. Ed. 2d 1009 (1977); <u>Mitchum v. Foster</u>, 407 U.S. 225, 228–29, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972).

> [A] federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear. Rather, when a state proceeding presents a federal issue, even a preemption issue, the proper course is to seek resolution of that issue by the state court.

<u>Chick Kam Choo v. Exxon Corp.</u>, 486 U.S. 140, 149–50, 108 S. Ct. 1684, 100 L. Ed. 2d 127 (1988) (internal quotation marks and citations omitted). "The three excepted circumstances are (i) the express provisions of another act of Congress authorizing such an order; (ii) necessity in aid of the federal court's jurisdiction and (iii) the need to protect or effectuate the federal court's judgments." <u>Standard Microsystems Corp. v. Texas Instruments Inc.</u>, 916 F.2d 58, 60 (2d Cir.

1990) (citing Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287–88, 90

S. Ct. 1739, 1743–44, 26 L. Ed. 2d 234 (1970)).

At the hearing, the Plaintiffs argued that, because they are seeking to enjoin the IHA from

prosecuting the state court action, and not the state court action itself, the Anti-Injunction Act is

inapplicable.  However, this is a distinction without a difference.  As the United States Supreme

Court found in Atlantic Coast Line, the Anti–Injunction Act "cannot be evaded by addressing the

order to the parties or prohibiting utilization of the results of a completed state proceeding".  Atl.

Coast Line, 398 U.S. at 287, 90 S. Ct. 1739; see also Pathways, Inc. v. Dunne, 329 F.3d 108, 113

(2d Cir. 2003) (citing County of Imperial v. Munoz, 449 U.S. 54, 58–59, 101 S. Ct. 289, 66 L.

Ed. 2d 258 (1980) for the proposition that federal court may not effectively enjoin state

proceeding by framing injunction as restraint on parties)); Studebaker Corp. v. Gittlin, 360 F.2d

692, 696 (2d Cir. 1966) (holding that the statutory bar set by the Anti-Injunction Act cannot be

avoiding "by directing the injunction solely to a party as distinguished from the state court").

Thus, unless the Plaintiffs' federal disability claims fit within one of three exceptions, the

Anti-Injunction Act precludes this Court from enjoining a state court eviction proceeding.  Allen

v. N.Y. City Hous. Auth., No. 10-CV-168, 2010 WL 1644956, at *3 (S.D.N.Y. April 20, 2010)

("Courts in this Circuit have repeatedly held that the Anti-Injunction Act bars a federal court

from enjoining state-court eviction proceedings.") (collecting cases); cf. Watkins v. Ceasar, 88 F.

App'x 458, 459 (2d Cir. 2004) (affirming denial of motion for preliminary injunction to stay a

state court eviction proceeding on the grounds that the federal district court was barred by the

Anti-Injunction Act).

Here, the parties primarily dispute whether the second exception applies, namely,

whether enjoining the eviction proceeding is "necessary in aid of [the federal court's]

jurisdiction."  28 U.S.C. § 2283.  A federal court properly acts "in aid of its jurisdiction" where

enjoining state proceedings is "necessary to prevent a state court from so interfering with a

federal court's consideration or disposition of a case as to seriously impair the federal court's

flexibility and authority to decide that case."  Atl. Coast Line, 398 U.S. at 295, 90 S. Ct. 1739;

see also Bess v. Spitzer, 459 F. Supp. 2d 191, 202 (E.D.N.Y. 2007) (Spatt, J.).

     Courts have held that this second exception is applicable when a plaintiff cannot present

his or her federal claims in the state court eviction proceeding.  For example, in McNeill v. New

York City Housing Authority, 719 F. Supp. 233, 256 (S.D.N.Y. 1989) the plaintiffs alleged that

the New York City Housing Authority's ("NYCHA") procedures for terminating their Section 8

benefits violated their constitutional right to due process and their rights under the United States

Housing Act and federal HUD regulations.  Although the plaintiffs received their Section 8

benefits from the NYCHA, their leases were with private landlords.  As a result, when the

NYCHA terminated their Section 8 benefits and they were no longer able to pay their rent, the

private landlords commenced eviction proceedings against the plaintiffs.  The court held that the

"in aid of jurisdiction" to the Anti-Injunction Act applied, reasoning that:

> Unless eviction proceedings are stayed long enough to adjudicate
> plaintiffs' alleged right to retroactive reinstatement in the Section 8
> program, plaintiffs will be evicted before this case can be decided.
> In this event, the Court will be unable to accord meaningful relief
> to the parties. Reinstatement in Section 8 without an apartment
> would be tantamount to no relief at all. Similarly, a change in
> NYCHA's Section 8 termination policies and practices would
> mean little to plaintiffs who have already lost their apartments.
> Preliminary injunctive relief thus is essential to aid this Court's
> ability to decide the claims and accord the appropriate relief.

Id. at 256. Central to the court's rationale was that the NYCHA was not, and could not become, a

party to the state court eviction proceedings, which were between the private landlords and the

plaintiffs.  Thus, if the eviction proceedings were not enjoined, the court would be "unable to

accord meaningful relief to the parties". Id.; see also Lattimore v. Northwest Co-op. Homes Ass'n, No. 90-CV-49, 1990 WL 10521534, at *4 (D.D.C. March 26, 1990) (holding that the court was not barred from enjoining the eviction proceeding based on the second exception to the Anti-Injunction Act because the plaintiff could "not raise her claims as a defense in the eviction proceeding"); cf. Caulder v. Durham Hous. Auth., 433 F.2d 998, 1002 (4th Cir. 1970) (affirming the district court's injunction of a state court eviction proceeding where the "plaintiff's right, if any, to litigate the issues in a state court appears more theoretical than real" and "therefore, that the factual basis on which to invoke the prohibition of § 2283 is lacking and the case is one in which the state proceedings may be enjoined 'in aid of * * * (the district courts) jurisdiction'").

By contrast, courts have found that where a plaintiff "could fully preserve in state court" as a defense the claims asserted in federal court, the second exception to the Anti-Injunction Act is not applicable because the "pendency of the state court proceedings would not meaningfully threaten th[e] Court's jurisdiction". Sierra v. City of New York, 528 F. Supp. 2d 465, 468 (S.D.N.Y. 2008); Bosch v. Lamattina, No. 08-CV-238, 2008 WL 4820247, at *7 (E.D.N.Y. Nov. 4, 2008) (holding that the Anti-Injunction Act barred the court from enjoining eviction proceedings in the Suffolk County District Court, Fifth District because the court had jurisdiction to hear the plaintiff's claims under the Real Estate Settlement Procedures Act); Armstrong v. Real Estate Intern., Ltd., No. 05-CV-5383, 2006 WL 354983, at *4 (E.D.N.Y. Feb. 14, 2006) (holding that the Anti-Injunction Act barred the court from enjoining eviction proceedings because "claims for rescission under TILA can be brought in state court, including as a defense to an eviction claim in Housing Court"); cf. Atl. Coast Line, 398 U.S. at 295, 90 S. Ct. at 1747 ("the state and federal courts had concurrent jurisdiction in this [labor dispute] and neither court was free to prevent either party from simultaneously pursuing claims in both courts").

11

Thus, if the Plaintiffs cannot assert their federal disability claims in the pending summary holdover proceeding, the Court would not be precluded by the Anti-Injunction Act from granting the requested injunctive relief.

In addition to the Anti-Injunction Act, the "Younger abstention doctrine creates a separate and independent barrier to federal court injunctions of pending state court proceedings." Erwin Chemerinsky, Federal Jurisdiction § 11.2.1 (4th ed. 2003). "The Younger abstention rule refers to the principle of federalism that 'a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate.'" Pathways, Inc. v. Dunne, 329 F.3d 108, 113–14 (2d Cir. 2003) (quoting Kirschner v. Klemons, 225 F.3d 227, 233 (2d Cir. 2000)).

The principles enunciated in Younger have been expanded to civil proceedings. See Huffman v. Pursue, Ltd., 420 U.S. 592, 594, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975). Notably, in the "interests of comity and federalism," the Younger abstention doctrine requires federal courts to abstain from jurisdiction "whenever federal claims *have been or could be presented in ongoing state judicial proceedings* that concern important state interests." Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 237–38, 104 S. Ct. 2321, 81 L. Ed. 2d 186 (1984) (emphasis added). Thus, as with the second exception to the Anti-Injunction Act, Younger abstention "does not apply when a plaintiff's federal claims cannot be presented in pending state proceedings." Tellock v. Davis, No. 02-CV-4311, 2002 WL 31433589, at *4 (E.D.N.Y. Oct. 31, 2002) (citing Kirschner, 225 F.3d at 233); see also McNeill, 719 F. Supp. at 256 (holding that, because the "pending eviction proceedings do not give plaintiffs an adequate forum to challenge termination of their Section 8 assistance . . . under the exceptions to the doctrine of Younger abstention and

12

the Anti-Injunction Act, the Court may stay housing court proceedings until the validity of the termination of plaintiffs' assistance can be decided.").

Accordingly, central to the Court's analysis under either the Anti-Injunction Act or the Younger abstention doctrine is whether the Plaintiffs can assert their federal disability claims in the pending state court proceeding.  The Plaintiffs contend that the Fifth District Court of the State of New York, County of Suffolk, where the eviction proceeding is pending, either cannot or will not entertain federal claims in opposition to an eviction proceeding brought by the IHA. Although the IHA cites Sierra for the proposition that the Plaintiffs can assert their federal disability claims in the summary holdover proceeding, the IHA primarily argues that the Court should deny the Plaintiffs' request for injunctive relief and abstain from this case because the Plaintiffs can assert their claims in an Article 78 proceeding in the New York state courts.

There is little caselaw on the burden a plaintiff must meet to show that they cannot raise their federal claims in the ongoing state proceeding for the purposes of meeting the second exception of the Anti-Injunction Act.  In Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970), the Fourth Circuit affirmed the injunction of a state court eviction proceeding where it seemed that "plaintiff's right, if any, to litigate the issues in a state court appear[ed] more theoretical than real".  Id. at 1002.  Similarly, to establish the inadequacy of state remedies for the purposes of avoiding Younger abstention, the Plaintiffs must "show[ ] that the State's laws, procedures, or practices would prevent [their] effective interposition of [their] federal contentions".  Kirschner, 225 F.3d at 235; see also Spargo v. New York State Com'n on Judicial Conduct, 351 F.3d 65, 78 (2d Cir. 2003) (holding that, to avoid Younger abstention, plaintiffs "must demonstrate that state law bars the effective consideration of their [federal] claims").

13

As set forth below, the Court finds that:  (1) the availability of an Article 78 proceeding is not relevant to the Court's Anti-Injunction Act and Younger abstention analysis, and (2) under the current case law in New York, the Plaintiffs ability to litigate their federal disability claims in the state court eviction proceeding is "more theoretical than real", and that they have met their burden of showing that the state court is unlikely to hear their federal disability claims for purposes of Younger abstention.

**1. As to the Availability of an Article 78 Proceeding**

The Defendants contend that, because the FHA, ADA, and Rehabilitation Act claims can be raised in an Article 78 proceeding, the Anti-Injunction Act precludes the Court from enjoining the summary holdover proceeding.  The Plaintiffs do not dispute that they could bring their claims in an Article 78 proceeding.  Rather, the Plaintiffs argue that the existence of an Article 78 proceeding is irrelevant because they are not required to assert their federal claims in an Article 78 proceeding.  The Court agrees.

The relevant focus of the Anti-Injunction Act and the Younger abstention doctrine are the federal court's powers and limitations with respect to "ongoing" state proceedings.  Because an Article 78 proceeding "is not an 'appeal' but rather a new proceeding challenging a decision by an administrative body or officer", the Court is not precluded from enjoining the summary holdover proceeding or divested of jurisdiction over the Plaintiffs' federal claims merely because an Article 78 remedy is available.  Meachem v. Wing, 77 F. Supp. 2d 431, 442 (S.D.N.Y. 1999) (citing N.Y. C.P.L.R. § 7804 (characterizing Article 78 proceeding as a "special proceeding" and specifying where such a proceeding may be "brought"); N.Y. C.P.L.R. § 7801 (providing that an Article 78 proceeding cannot be used to challenge a determination that "can be adequately reviewed by appeal to a court or to some other body")); cf. Huffman v. Pursue, Ltd., 420 U.S.

14

592, 608, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975) (holding that because the plaintiff had not

exhausted his state court appeals, abstention was appropriate because "[v]irtually all of the evils

at which Younger is directed would inhere in federal intervention prior to completion of state

appellate proceedings.").

Indeed, it is well-settled that a plaintiff is not required to exhaust administrative remedies

before commencing an FHA, ADA, or Rehabilitation Act claim in federal court. See Huntington

Branch, N.A.A.C.P. v. Town of Huntington, 689 F.2d 391, 394 n.3 (2d Cir. 1982) (holding that a

party challenging a municipality's zoning decision under the FHA does not need to exhaust

administrative remedies, even where, as here, the "reasonable accommodation" test is invoked);

Advocacy and Res. Ctr. v. Town of Chazy, 62 F. Supp. 2d 686, 688 (N.D.N.Y. 1999) (holding

that, because the FHA explicitly provides that "an aggrieved party does not need to exhaust

parallel administrative remedies provided through [HUD] before commencing a Federal action. .

. . . It would seem logical that if an aggrieved party does not need to exhaust HUD remedies

before filing a federal action, he or she should not have to exhaust local remedies.") (citing 42

U.S.C. § 3613(B)(2)); Sokoya v. 4343 Clarendon Condo Ass'n, No. 96-CV-5278, 1996 WL

699634, at *3 (N.D. Ill. Nov. 27, 1996) ("In addition, a plaintiff need not exhaust available

administrative remedies before filing a private action for violation of Section 3604(a).") (citing

42 U.S.C. 3613(a)(2); Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 103–4, 99 S. Ct.

1601, 60 L. Ed. 2d 66 (1979)); cf. Tsombanidis v. West Haven Fire Dept., 352 F.3d 565, 578–79

(2d Cir. 2003) (noting that, after the plaintiff has provided the governmental entity an

"opportunity to accommodate them through the entity's established procedures . . . . It may be

that once the governmental entity denies such an accommodation, neither the FHAA nor the

ADA require a plaintiff to *exhaust* the state or local administrative procedures") (emphasis in

original); Joseph's House and Shelter, Inc. v. City of Troy Planning Bd., No. 05-CV-513, 2009 WL 2413936, at *1 (N.D.N.Y. March 31, 2009) ("It is well-established that plaintiffs are entitled to bring an FHA and ADA claim based on a discriminatory land use decision, even if a state-court Article 78 proceeding is available." ) (citing Reg'l Econ. Ctmy. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 45 (2d Cir. 2002)).

Moreover, neither the HUD regulations nor the IHA Grievance Procedures require a tenant to exhaust administrative remedies insofar as they both provide that:

> A decision by the hearing officer, hearing panel, or Board of Commissioners in favor of the PHA or which denies the relief requested by the complainant in whole or in part shall not constitute a waiver of, nor affect in any manner whatever, any rights the complainant may have to a trial de novo or judicial review in any judicial proceedings, which may thereafter be brought in the matter.

24 C.F.R. § 966.57(c) (IHA Grievance Procedure VII.E.).  Furthermore, the Joint Statement advises public housing tenants that, if they feel that a housing authority has denied them a reasonable accommodation in violation of their rights under the FHA, they can either:  (1) file a complaint with HUD or (2) file a complaint in federal court.  Joint Statement at 14.

Nevertheless, while the Decision may not "affect in any manner" the Plaintiffs' right to commence this federal action, it does not provide the Court with jurisdiction to review aspects of the Decision that are unrelated to the Plaintiffs' federal claims.  For example, the Plaintiffs argue that the Defendants should have exercised their discretion pursuant to 24 C.F.R. § 966.4 to consider mitigating factors and provide a less harsh sanction, and then state, without any supporting caselaw, that "[t]his Court has supplemental jurisdiction to consider the severity of the penalty to be imposed".  (Pl.'s Initial Mem. at 5.)  Furthermore, in the context of arguing that Levitt was not an impartial decisionmaker, the Plaintiffs dispute his factual findings, credibility

determinations, and compliance with IHA grievance procedures.  The Court can only consider these challenges to the extent they violated the Plaintiffs' due process rights, and not the propriety of the ultimate decision.  As the Second Circuit held in Lopez v. Henry Phipps Plaza South, Inc.,

> It is well to repeat at the outset that the Civil Rights Act does not empower a federal judge to interfere with a 'state' landlord's decision not to renew a lease simply because he thinks the decision harsh or unwise; he is authorized to do this only if the tenant has been deprived of due process of law.

498 F.2d 937, 944–45 (2d Cir. 1974); see also Coastal Commc'ns Serv., Inc. v. City of New York, 658 F. Supp. 2d 425, 459 (E.D.N.Y. 2009) ("The overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so.").

If the Plaintiffs were to commence an Article 78 proceeding, the state court would have the jurisdiction to hear all of the Plaintiffs' federal claims, as well as perform a review of Levitt's factual findings, compliance with grievance procedures, and ultimate decision.  Nevertheless, although the Plaintiffs "could challenge the administrative decisions terminating their [tenancy] by commencing an Article 78 proceeding in state court, the mere fact that a state court of general jurisdiction can entertain any claim between two parties properly before it is too insubstantial a basis for compelling a party which wishes to bring federal constitutional claims in federal court to present those claims to a state court instead."  Meachem, 77 F. Supp. 2d at 442 (internal quotation marks and citation omitted).

### 2. As to the Ability of the Plaintiffs' to Raise Federal Defenses in the State Court Eviction Proceeding

The jurisdiction of the District Court in Suffolk County, where the eviction proceeding is pending, is governed by the New York Uniform District Court Act.  See N.Y. Uniform Dist. Ct.

Act ("UDCA") § 2501 ("The civil and criminal jurisdiction of and practice and procedure in the district court of Suffolk county shall be as set forth in the uniform district court act.").  Pursuant to UDCA § 204, the district court has "jurisdiction of summary proceedings to recover possession of real property located in whole or in part within a district of the court in the county, to remove tenants therefrom, and to render judgment for rent due without regard to amount."  UDCA § 204.  Similar rules and regulations govern summary proceedings in the New York City Civil Courts.  See also N.Y. City Civil Ct. Act § 204.  The Court may refer to a civil court or district court in which a summary holdover proceeding is pending as a "housing court".  Summary proceedings between a landlord and tenant are governed by Article 7 of the Real Property Actions and Proceeding Law ("RPAPL") § 701, *et seq.*

"A summary proceeding commenced under RPAPL Article 7 is a special proceeding governed entirely by statute requiring strict compliance with the statutory mandates to give the court jurisdiction."  New York Hous. Auth. v. Fountain, 172 Misc. 2d 784, 785, 660 N.Y.S.2d 247, 249 (N.Y. Civ. Ct. 1997).  In adjudicating an eviction proceeding, both the UDCA and the RPAPL expressly authorize the district court to "consider any defense to a cause of action or claim asserted by any party, whether such defense be denominated or deemed legal or equitable in nature."  UDCA § 905; RPAPL § 743 ("The answer may contain any legal or equitable defense, or counterclaim.").  Thus, as general rule, because "[t]he issue in any summary proceeding for possession is whether landlord is entitled to such possession . . . any equitable defense offered by the tenant to show that landlord is not entitled to possession must be considered".  Cobert Constr. Corp. v. Bassett, 109 Misc. 2d 119, 121, 442 N.Y.S.2d 678, 680 (N.Y. App. Term. 1981).  Neither statute includes a limitation on the types of defenses that can be asserted.  Moreover, UDCA § 212 expressly provides that "[i]n the exercise of its jurisdiction

18

the court shall have all of the powers that the supreme court would have in like actions and proceedings." Accordingly, to the extent that a party can raise a defense, legal or equitable, state or federal, in a summary proceeding commenced in New York State Supreme Court, the district court similarly has jurisdiction to hear such claims.

Nevertheless, "the need for speedy dispositions in landlord-tenant matters ordinarily dictates that counterclaims be severed unless they are in essence a defense to landlord's claim or so intertwined with such a defense as to become part and parcel thereof." Committed Cmty. Assocs. v. Croswell, 171 Misc. 2d 340, 343, 659 N.Y.S. 2d 691, 693 (N.Y. App. Term. 2d Dep't 1997), aff'd 250 A.D.2d 845, 673 N.Y.S.2d 708 (2d Dep't 1998). Thus, in Tellock v. Davis, No. 02-Cv-4311, 2002 WL 31433589 (E.D.N.Y. Oct. 31, 2002), the court held that, because the plaintiff-tenant's federal Title VII and FHA claims against the defendant-landlord alleging race discrimination would have been considered a counterclaim in the civil court summary holdover proceeding, and the civil court had ruled that it would not take jurisdiction over the federal discrimination claims, Younger abstention was inapplicable and the court was not barred by the Anti-Injunction Act from staying the state court summary holdover proceeding. Id., at *4.

By contrast, the Plaintiffs' federal disability claims would constitute a "defense" in the eviction proceeding, because they contend that the IHA's termination of their tenancy without considering a reasonable accommodation for their disabilities violates federal law and therefore is invalid. Thus, pursuant to RPAPL § 743, where, as here, federal disability claims have been classified as "defenses" in eviction proceedings, housing courts have jurisdiction to hear them. Cf. RCG-UA Glenwood, LLC v. Young, 9 Misc. 3d 25, 26, 801 N.Y.S.2d 481, 481–82 (N.Y. App. Term 2005) (affirming Civil Court ruling in favor of plaintiff-tenant dismissing an eviction petition because reasonable accommodation was required under the FHA); Crossroads

19

Apartments Assocs. v. LeBoo, 152 Misc. 2d 830, 578 N.Y.S.2d 1004 (N.Y. City Ct. 1991)

(holding that the plaintiff in an eviction proceeding by a private landlord in federally funded

section 8 housing could assert claims for violations of the Rehabilitation Act and FHA as

affirmative defenses with regard to no-pet policy); Landmark Props. v. Olivo, 5 Misc.3d 18, 783

N.Y.S.2d 745 (N.Y. App. Term 2004) (affirming housing court ruling awarding possession to

landlord-defendant where tenant-plaintiff failed to prove his affirmative defense that he was

entitled to keep a dog for therapeutic reasons as a reasonable accommodation pursuant to the

FHA).

Indeed, federal courts have held in subsequent proceedings that they either lack

jurisdiction over federal disability claims pursuant to the Rooker-Feldman doctrine or are barred

from considering the claims under the doctrine of *res judicata* because the claims are

"inextricably intertwined" with the grounds for termination and therefore should have been

raised in the eviction proceeding.  See Babalola v. B.Y. Equities, Inc., 63 F. App'x 534, 535 (2d

Cir. 2003) (affirming district court's dismissal of the plaintiff's FHA and civil rights claims that

she was the victim of a discriminatory conspiracy to wrongfully evict her from her apartment as

barred by the Rooker-Feldman doctrine, because the claims were "inextricably intertwined" with

the New York State housing court's eviction order); Springer v. Lincoln Shore Owners, Inc., No.

03-CV-4676, 2007 WL 2403165, at *4 (E.D.N.Y. Aug. 16, 2007) ("In sum, the Civil Court, in

entering judgment in favor of Lincoln Shore, determined that Lincoln Shores was entitled to

terminate the lease; although the Springers did not argue that the termination would violate FHA

and ADA, they could have. To allow them to raise the argument now would plainly impair the

rights and interests established in the Civil Court action; therefore, the present action is barred by

*res judicata*."); see also Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 549–50

(3d Cir. 2006) ("[B]y interposing a theory of liability under the FHA in the district court that she

had withheld in the common pleas court, Turner did not create a separate cause of action and

thereby insulate her claim in the district court from the application of the doctrine of *res judicata*.

Rather, what she did do was ensure that neither court would consider her FHA claims on the

merits. Even though this result may seem to be unfortunate, it is a product of her own litigation

strategy, and she is obliged to accept it. . . . Accordingly, because Turner correctly concedes that

there was no jurisdictional obstacle to the FHA claims being litigated in state court, this action is

barred by the application of the principle of *res judicata*").

      However, in all of the above-cited cases, the landlord that commenced the summary

proceeding was a private landlord.  Where, as here, the party commencing the summary

proceeding is a federally-funded housing authority, the housing court's jurisdiction to engage in

a *de novo* review of the lease termination hinges in part, on whether the public housing tenant

was afforded an administrative hearing.

      Where a public housing tenant has not received an administrative hearing prior to the

commencement of a summary holdover proceeding, the housing court has the jurisdiction to

provide the requisite due process and entertain all legal and equitable defenses, including

constitutional due process and civil rights claims.  <u>See</u> <u>Hempstead Hous. Auth. v. Wells</u>, 155

Misc. 2d 873, 590 N.Y.S.2d 1014 (N.Y. Dist. Ct. 1992) ("Summary proceedings in local courts

afford all the due process guaranties to which a tenant is entitled.  Therefore, what State courts

are doing in a summary proceeding involving Federally subsidized housing programs is holding

a due process hearing applying Federal law.") (internal citation omitted); <u>N.Y. County Dist.</u>

<u>Attorney's Office v. Oquendo</u>, 147 Misc. 2d 125, 130, 553 N.Y.S.2d 973, 976 (N.Y. City Civ.

Ct. 1990) ("There is no requirement that the Housing Authority must be the forum in which the

tenant is afforded procedural protections prior to being evicted. All procedural guarantees such as proper notice, access to information upon which any decision is based, the right to confront and cross-examine witnesses, and the opportunity to present evidence can and will be afforded to respondents in the hearing before this Court.").

Here, the Plaintiffs have already received an administrative hearing. Thus, the operative question is whether where, as here, the legal and equitable defenses are also challenges to the agency determination, the housing court has the jurisdiction to hear them.

"Unlike a constitutionally created Court of equity; [the district court] is a creature of statute which does not have the equitable power to enjoin and annul the actions of the state agencies and officers." Millennium Hills Hous. Dev. Fund Corp. v. Patterson, 25 Misc.3d 1214(A), 901 N.Y.S.2d 908 (Table), 2009 WL 3321432, at *2 (N.Y. Dist. Ct. Oct. 16, 2009), aff'd 31 Misc. 3d 134(A), 927 N.Y.S.2d 817 (Table), 2011 WL 1448135 (N.Y. App. Term 2011). Pursuant to N.Y. CPLR § 7804, an Article 78 proceeding to review an agency determination is a "special proceeding" that "shall be brought in the supreme court". The Supreme Court has exclusive subject matter jurisdiction over most Article 78 proceedings. See Vanderbilt Museum v. Am. Ass'n of Museums, 113 Misc. 2d 502, 507, 449 N.Y.S.2d 399, 403 (N.Y. Sup. Ct. 1982); cf. Cartagena v. City of New York, 257 F. Supp. 2d 708, 709 (S.D.N.Y. 2003) ("The Article 78 proceeding is a novel and special creation of state law, and state law provides that the Supreme Court has exclusive jurisdiction over Article 78 claims . . . .") (internal quotations omitted). As a result, "New York law bars the evicting Court from a full merit review of governmental housing lease terminations . . . [because] the determinations of governmental officials are reviewable only pursuant to petition to Supreme Court as an Article 78 proceeding." Patterson, 2009 WL 3321432, at * 2; N.Y. City Hous. Auth. v. Alvarez, 64 Misc. 2d 358, 359,

314 N.Y.S.2d 957, 959 (N.Y. City Civ. Ct. 1970) ("[I]t has been held that the reason for termination of a public housing tenancy is not a matter which is cognizable in a holdover summary proceeding brought in the Civil Court. Accordingly, any proffered proof of facts which deal with administrative grounds upon which the authority determined to terminate the tenancy of these tenants is irrelevant to a holdover proceeding. The propriety of its determination as to the ineligibility of the tenants here, while reviewable in an Article 78 Proceeding in the Supreme Court, is not open to question in this summary proceeding to remove the tenant as a holdover.") (citations omitted).

Accordingly, where a public housing tenant—as opposed to a tenant whose private landlord received federal or state funding—was afforded an administrative hearing, courts have held that the housing court lacks jurisdiction to perform a *de novo* review of the lease termination. Instead, the court performs what is referred to as a "limited due process" review, which ensures that the administrative hearing complied with minimum due process requirements. Patterson, 2009 WL 3321432, at *2 (citing Fuller v. Urstadt, 28 N.Y.2d 315, 270 N.E.2d 321, 321 N.Y.S.2d 601 (1971)); Millenium Hills Hous. Dev. Fund Corp. v. Davis, 32 Misc. 3d 1234(A), 936 N.Y.S.2d 59 (Table), 2011 WL 3631960, at *2 n.1 (N.Y. Dist. Ct. June 17, 2011) ("It is the normal role of this Court, when sitting in its landlord/tenant capacity, to adjudicate whether the lease has been terminated pursuant to its terms. However the Fuller decision established the concept of "limited due process" which limits the landlord/tenant Court's inquiry to only whether the tenant received a written explanation of the lease violation and an opportunity to address same.").

Thus, the district court is unlikely to hear the Plaintiffs' federal defenses in the summary holdover proceeding initiated by the IHA—as opposed to a private landlord—because any

23

contrary determination by the housing court would constitute a review of the merits of the Decision.  The only possible exception would be if the housing court determined that it was entitled to conduct a trial *de novo* under 24 C.F.R. § 966.57, in which case the Plaintiffs would be entitled to raise all legal and equitable defenses, including the constitutional due process and federal claims raised here.  Although the Court has already held that § 966.57(c) permits the Plaintiffs to assert their federal claims in this court, whether and to what extent they are entitled to raise those claims in the pending state proceeding is for the state court to decide.

Recently, in <u>Stewart v. Lancaster</u>, an Article 78 proceeding commenced by a public housing tenant against the Freeport Housing Authority, Justice Ute Wolff Lally held that, based on § 966.57(c), a housing authority's decision to terminate a tenancy following an administrative hearing that finds against the tenant is "nonfinal".  Index No. 20091/2007, 2008 N.Y. Misc. LEXIS 7884, at *7 (N.Y. Sup. Ct. Feb. 27, 2008).  Therefore, because an Article 78 court only has jurisdiction to review "final" agency decisions, <u>see</u> N.Y. CPLR § 7801(1), Justice Lally held that the court lacked jurisdiction to review the Freeport Housing Authority's decision to terminate the plaintiff's tenancy.  She also stated that, despite having received a full administrative hearing, the plaintiff was "entitled to a trial *de novo* as to whether she violated her lease" in the summary holdover proceeding.  <u>Id.</u>  Thereafter, the district court in the summary holdover proceeding conducted a trial *de novo*, allowing the tenant to raise all legal and equitable defenses available.  <u>See</u> <u>Freeport Hous. Auth. v. Stewart</u>, 20 Misc.3d 1139(A), 872 N.Y.S.2d 690 (Table), 2008 WL 406588 (N.Y. Dist. Ct. Sept. 3, 2008).  The district court's decision was affirmed on appeal.  <u>See</u> <u>Freeport Hous. Auth. v. Stewart</u>, 29 Misc.3d 134(A), 920 N.Y.S.2d 241 (Table), 2010 WL 4630338 (N.Y. App. Term Nov. 12, 2010).  However, the appellate term did

24

not address the propriety of conducting the trial *de novo* despite the fact that an administrative hearing had been held.

The contention that § 966.57(c) entitles a public housing tenant to a *de novo* review in a summary holdover proceeding, even after a full administrative hearing, has been adopted in a number of states.  See, e.g., Jones v. Chester Hous. Auth., No. 93-CV-3597, 1993 WL 332068, at *2 (E.D. Pa. 1993) ("The tenants who complete the grievance hearing, before the hearing officer, are entitled under 24 C.F.R. § 966.57 to a trial *de novo* of any adverse administrative decision."); Hous. and Redev. Auth. of St. Cloud v. Tesfaye, 2010 WL 1753271, at *5 (Minn. App. May 4, 2010)("The federal regulations allow for a *de novo* trial in district court, 24 C.F.R. § 966.57(c) (2009), and for purposes of that proceeding, the hearing officer's decision is neither binding nor owed deference by the district court."); Hous. Auth. of St. Louis County v. Lovejoy, 762 S.W.2d 843, 845–46 (Mo. Ct. App. 1988) ("The grievance hearing was not intended to determine the tenant's rights. It was instead intended to prevent the Housing Authority, acting in the capacity of a landlord, from wrongfully or prematurely infringing on a tenant's rights. The findings of the authority are equivalent to a notice to vacate the premise served by a private landlord on a private tenant. The appellant's rights were left unaffected by the findings of the Housing Authority. The Housing Authority's decision is simply a landlord's decision not to renew the lease. The legal rights of the parties remain unadjudicated.").

However, in New York, the Stewart decision stands alone in its interpretation of § 966.57(c).  See Patterson, 2009 WL 3321432, at *2 n.1 (distinguishing Stewart as "inconsistent with decades of precedent . . . which indicates that the Supreme Court is the appropriate forum for these government lease termination disputes").  Indeed, despite the Stewart decision's holding that § 966.57(c) precludes review of housing authority determinations, Article 78 courts

continue to assert jurisdiction over challenges to housing authority termination decisions.  Davis v. N.Y. City Hous. Auth., 30 Misc.3d 1202(A), 2010 WL 5187708, at *2 (N.Y. Sup. Ct. Dec. 8, 2010) ("While under article 78 the power of the supreme court to overturn an administrative agency's determination is limited, the court is charged with the obligation to insure that the proceeding leading to such determination comports with basic tenets of due process and complies with the agency's own guidelines and procedures.").

Those New York courts that have allowed a trial *de novo* in an eviction proceeding following an administrative hearing have done so not in reliance in § 966.57(c), but on language specific to that particular housing authority's grievance procedure.  For example, in New York City Housing Authority v. Simmons, the court held that the tenant could assert succession rights in a summary holdover proceeding in civil court commenced by the housing authority, despite the fact that she had defaulted by failing to appear at the administrative hearing, because the housing authority's grievance procedure explicitly provided:

> No collateral, estoppel or *res judicata* effect of Grievance Procedure decisions and findings shall apply in such de novo judicial trial or other judicial proceedings.

148 Misc.2d 709, 710–11, 568 N.Y.S.2d 258, 258–59 (N.Y. App. Term. 1990).  Similarly, in Municipal Housing Authority for the City of Yonkers v. Jones, the Appellate Term held that, despite that fact that the housing authority's termination decision was made following a full administrative hearing, the court in the summary holdover proceeding was required to conduct a trial *de novo*, as opposed to the limited due process review.  In reaching this conclusion, the court distinguished the language in § 966.57(c) from that of the housing authority's grievance procedure, which provided:

> [a] decision by the Hearing Officer . . . which denies the relief requested by the complainant shall not constitute a waiver of, nor affect in any way, the rights of the complainant to a trial *de novo* or

26

judicial review in any judicial proceedings, which may thereafter
be brought in the matter.

13 Misc. 3d 141(A), 831 N.Y.S.2d 360 (Table), 2006 WL 3437868, at *1–*2 (N.Y. App. Term

Nov. 15, 2006). The Yonkers court held that the omission of the words "any" and "may have"—

which are in § 966.57(c) but not the grievance procedure—"affirmatively suggests that the tenant

has a right to a trial *de novo*". Id.; see also Town of Oyster Bay Hous. Auth. v. Schwartz, 25

Misc.3d 1223(A), 906 N.Y.S.2d 776 (Table),  (N.Y. Dist. Ct. Nov. 10, 2009) (holding that the

court did not need to rule on whether § 966.57(c) required the housing court to provide for a trial

*de novo* following an administrative hearing because, as in Yonkers, the housing authority's

grievance procedures also omitted the words "any" and "may have" as found in the federal

regulations, and therefore a right to a trial *de novo* was "granted by the Housing Authority in its

grievance procedures"); cf. New York City Hous. Auth. v. Margiato, 4 Misc.3d 135(A), 791

N.Y.S.2d 871 (Table), 2009 WL 3764735 (N.Y. App. Term 2004) (holding that the court "need

not here decide whether the federal regulation creates a right to a trial *de novo* where none is

elsewhere granted or merely preserves such rights if elsewhere granted since we find the

regulation to be inapplicable to the case at bar").  However, unlike the grievance procedures in

Simmons, Yonkers, and Schwartz, the language in the IHA's grievance procedure is identical to

the language in § 966.57(c).

Thus, in New York state courts, in would appear that § 966.57(c) operates to provide

public housing tenants with judicial review in an Article 78 proceeding, as opposed to a trial *de
novo* in the summary proceeding.  See Yonkers, 2006 WL 3437868, at *1 (holding that

§ 966.57(c) "is not to create any rights to a trial *de novo* of the issue of whether the tenancy was

properly terminated but merely to preserve the tenant's right to judicial review of the

administrative determination in a CPLR article 78 proceeding").  As a result, the Court finds that

the Plaintiffs have met their burden of showing that they cannot assert their federal disability claims in the pending state court eviction proceeding.  Accordingly, assuming the Plaintiffs can meet the other requirements for obtaining a preliminary injunction, the Court is not barred by the Anti-Injunction Act from enjoining the state court eviction proceeding, and the Court is not required to abstain from reaching the Plaintiffs federal claims under the <u>Younger</u> abstention doctrine.

## B.  Legal Standard for a Preliminary Injunction

"In order to justify a preliminary injunction, a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'  <u>Metro. Taxicab Bd. of Trade v. City of New York</u>, 615 F.3d 152, 156 (2d Cir. 2010) (quoting <u>Almontaser v. N.Y. Dep't of Educ.</u>, 519 F.3d 505, 508 (2d. Cir. 2008)).  Generally, the purpose of a preliminary injunction is to preserve the status of the parties until a determination on the merits of the plaintiffs' claims can be made.  <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).  However, "[w]hen, as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard."  <u>Metro. Taxicab</u>, 615 F.3d at 156 (quoting <u>Cnty. of Nassau v. Leavitt</u>, 524 F.3d 408, 414 (2d Cir. 2008)); <u>Lynch v. City of New York</u>, 589 F.3d 94, 98 (2d Cir. 2009).

### 1.  Irreparable Harm

As a general matter, courts have held that the "threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable harm and satisfy the first prong of the test for

preliminary injunctive relief." Tellock v. Davis, No. 02-CV-4311, 2002 WL 31433589, at *7 n.2

(E.D.N.Y. Oct. 31, 2002) (citing McNeill v. New York City Hous. Auth., 719 F. Supp. 233, 254

(S.D.N.Y. 1989)); Baumgarten v. Cnty. of Suffolk, No. 07-CV-539, 2007 WL 1490482, at *5

(E.D.N.Y. May 15, 2007) (finding irreparable harm where the plaintiff faced immediate eviction

absent the issuance of a preliminary injunction).  Here, if the IHA is not enjoined from pursuing

the summary holdover proceeding, the Plaintiffs will be evicted and rendered homeless.  Thus,

the Court finds that the Plaintiffs have satisfied the first requirement for a preliminary injunction

by showing irreparable harm.

### 2.  Likelihood of Success on the Merits

The HUD Regulations and the Lease Agreement both permit a housing authority to

terminate a tenancy where the tenant, or any member of the tenant's household, engages in

> criminal activity that threatens the health safety, or right to
> peaceful enjoyment of the Authority's public housing premises by
> other residents or employees of the Authority, or violent criminal
> activity committed on or off the premises

Lease XIV(a)(7); 24 C.F.R. §§ 966.4(l)(2)(iii)(a), 966.4(1)(5)(ii)(a).  However, even where a

public housing tenant engages in criminal activity, a housing authority cannot terminate their

tenancy without affording them due process.  In addition, the housing authority cannot terminate

ones tenancy if it would violate the FHA, ADA, or Rehabilitation Act.  See 24 C.F.R. §

960.103(a) ("[t]he PHA must administer its public housing program in accordance with all

applicable equal opportunity requirements imposed by contract or federal law, including [the

FHA, ADA, and Rehabilitation Act]" (citing 24 C.F.R. § 5.105); 24 C.F.R. § 966.4(1)(5)(vii)(F)

(2008) ("eviction actions must be consistent with fair housing and equal opportunity

provisions"); cf. 42 U.S.C. § 1437d(1)(6) (setting forth grievance procedure requirements for

evicting a tenant that engages in "any criminal activity that threatens the health, safety, or right to

peaceful enjoyment of the premises by other tenants ... shall be cause for termination of tenancy." ).  In this regard, the Court will address separately the Plaintiffs' likelihood of success on their Section 1983 causes of action and their claims under the federal disability statutes.

However, although the Plaintiffs asserted their causes of action in the complaint as against all of the Defendants, the parties only addressed the Plaintiffs' likelihood of success on the merits of their claims as against the IHA.  Accordingly, the discussion below focuses only on the Plaintiffs' likelihood of success on the merits of their claims as against the IHA.

### a.  Whether the Plaintiffs Can Show a Likelihood of Success on the Merits of Their Claims Under Section 1983

In the complaint, the Plaintiffs assert causes of action pursuant to 42 U.S.C. § 1983, alleging that the IHA:  (1) violated their due process rights as protected by the Fourteenth Amendment by failing to provide an impartial decisionmaker at the administrative hearing, and (2) violated their statutory rights under the United States Housing Act of 1937;  FHA; ADA; and the Rehabilitation Act.

### i.  As to the Plaintiffs' Section 1983 Claim for a Violation of Due Process

In the complaint, the Plaintiffs allege that the Defendants violated their due process rights by failing to provide an impartial decisionmaker.  Although the Plaintiffs' initial submission in support of the instant motion asserted that the purported inadequacy of the Decision constituted an independent due process violation, this contention is stated in a conclusory fashion and is not included in the complaint.  Thus, the Court will only address the Plaintiffs' likelihood of success on their claim, as asserted in the complaint, that the failure to provide an impartial decisionmaker was a violation of their constitutional right to due process.

For its part, the IHA did not directly respond to the Plaintiffs' due process claim, except to argue that the Plaintiffs have an adequate remedy for any alleged violations through an Article

78 proceeding.  However, because the Court finds that the Plaintiffs have not shown a likelihood of success on the merits of the alleged due process violation, the Court does not need to consider whether the availability of an Article 78 proceeding precludes a cause of action under Section 1983.

In order to state a valid claim under 42 U.S.C. § 1983, a plaintiff must show that the conduct in question deprived him of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law.  42 U.S.C. § 1983; Washington v. Cnty. of Rockland, 373 F.3d 310, 315 (2d Cir. 2004).  It is well-settled that Section 1983 itself "creates no substantive rights" but rather "provides only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432, 85 L. Ed. 791 (1985)).  Thus, whether brought directly as a due process violation under the Fourteenth Amendment, or through the statutory vehicle of Section 1983, the Plaintiffs necessarily must establish that the IHA's conduct deprived them of their constitutional due process rights.

The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, "only against deprivations without due process of law."  Parratt v. Taylor, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) (internal quotation marks omitted), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 330–31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).  Put another way, where a plaintiff alleges violations of procedural due process "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*".  Zinermon v.

31

Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (emphasis in original).  To

determine whether the Plaintiffs have a valid due process claim, the Court applies a two-step

inquiry: (1) whether the Plaintiffs possess a property interest and, if so, (2) what process they are

due before they can be deprived of that interest.  See Ciambriello v. Cnty. of Nassau, 292 F.3d

307, 313 (2d Cir. 2002).

 As to the first step of the analysis, the parties do not appear to dispute that the Plaintiffs,

as public housing tenants, have a constitutionally protected interest in the continued occupancy

of their apartment.  The IHA has not argued to the contrary.  Therefore, for the purposes of this

motion, the Court finds that the Plaintiffs have a protected property interest in participating in the

Program, and that their property interest is entitled to the protection of due process.  United

States v. Leasehold Interest in 121 Nostrand Ave., Apt. 1-C, Brooklyn, N.Y., 760 F. Supp. 1015,

1027 (E.D.N.Y. 1991) ("A public housing tenant's interest in his apartment is a property interest

protected by the Constitution."); Jackson Terrace Ass'n v. Paterson, 155 Misc. 2d 556, 557, 589

N.Y.S.2d 141, 141 (N.Y. Dist. Ct. 1992) ("A tenant in a federally subsidized housing project has

a constitutionally protected expectation of continued occupancy in the absence of good cause for

termination and such statutory entitlements are protected by the due process clause of the

constitution."); see also Kapps v. Wing, 404 F.3d 105, 113 (2d Cir. 2005) ("procedural due

process protections ordinarily attach where state or federal law confers an entitlement to

benefits"); Lopez v. Henry Phipps Plaza South, Inc., 498 F.2d 937 (2d Cir. 1974) (tenant in a

nonprofit housing development had an expectation in the renewal of her lease and nonrenewal

without a hearing amounted to a deprivation of due process).

Having found a property interest, the Court proceeds to the second inquiry, that is, what process public housing tenants are entitled to under the Constitution before their tenancy can be terminated.

To satisfy traditional due process requirements, a proceeding for termination of public assistance must meet the following criteria: (1) timely notice stating the reason for the termination, (2) an opportunity to appear at a hearing and to present evidence and question witnesses, (3) the right to representation by counsel at the hearing, (4) the right to have the decision rest solely on the rules of law and evidence adduced at the hearing, and (5) the right to an impartial decision maker.  Goldberg v. Kelly, 397 U.S. 254, 266–71, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).  The requirements for pre-deprivation process set forth in Goldberg are "equally applicable to the hearing to be afforded tenants of public housing before the determination to evict them."  See Caulder v. Durham Hous. Auth., 433 F.2d 998, 1004 (4th Cir. 1970) (citing Escalera v. N.Y. City Hous. Auth., 425 F.2d 853 (2d Cir. 1970)).

Under the fifth prong of Goldberg, in order to comport with due process, a housing authority must provide an impartial decisionmaker prior to terminating housing benefits.  397 U.S. at 266, 90 S. Ct. 1011.  Absent an impartial decisionmaker, a hearing fails to comport with the due process requirement of a "fair trial in a fair tribunal", which is "a basic requirement of due process".  Withrow v. Larkin, 421 U.S. 35, 46, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) (internal quotation marks omitted).  "Any other collateral procedural guarantees are largely without meaning if the deciding tribunal has in some way adversely prejudged the merits of the case."  Simard v. Bd. of Educ. of Town of Groton, 473 F.2d 988, 993 (2d Cir. 1973).  "'[A]dministrative agencies which adjudicate' are bound by this rule as well as courts."  Xue Ming Zheng v. N.Y. City Hous. Auth. Office of Impartial Hearing, No. 10-CV-509, 2010 WL

3910480, at *3 (S.D.N.Y. Sept. 28, 2010) (quoting Withrow, 421 U.S. at 46, 95 S. Ct. 1456). However, as a general matter, adjudicators in an administrative hearing are entitled to a "presumption of honesty and integrity". Id. (quoting Withrow, 421 U.S. at 46, 95 S. Ct. 1456).

"[A]n impartial decisionmaker is one who . . . does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990). "Whether a particular decisionmaking procedure is constitutionally defective for want of impartiality will depend on many factors, among which are the character of the decision being made, the nature of the individual and governmental interests at stake, and the feasibility of alternative procedures." Wolkenstein v. Reville, 694 F.2d 35, 41 (2d Cir. 1982) (internal citations omitted). "[V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable" including cases where "the adjudicator has a pecuniary interest in the outcome" or where the adjudicator "has been the target of personal abuse or criticism from the party before him". Withrow, 421 U.S. at 47, 95 S. Ct. 1456.

Here, the Plaintiffs contend that the Defendants violated their due process rights because the hearing officer at their administrative hearing, the defendant Levitt, was not an impartial decisionmaker. The basis for this contention is not that there was anything inherent in the selection of Levitt that rendered him biased, or that he made any statements indicating that he was biased. Rather, the contention is that bias can be inferred from: (1) his adoption of an improper standard of proof at the administrative hearing; (2) his failure to fully and adequately address the reasons for upholding the IHA's determination to terminate the Plaintiffs' tenancy in the Decision; (3) his failure to address the Plaintiffs FHA, ADA, and Rehabilitation Act claims in the Decision; (4) his failure to adhere to HUD regulations in considering a less harsh sanction

34

and mitigating factors; and (5) his credibility determinations insofar as he credited the testimony of Collins and the eyewitness over that of the Plaintiffs.  Even accepting the Plaintiffs' allegations as true, which the Court is not required to do on a motion for a preliminary injunction, in the Court's view, they do nothing more than question Levitt's competency, not his impartiality.  The fact that the Plaintiffs may have been subject to a decision that was legally erroneous, or which was rendered without considering a "less harsh sanction" or "mitigating factors", is not equivalent to a deprivation of their constitutional right to an impartial decisionmaker.

"Evidence of errors, even multiple errors, is no evidence of bias", unless a plaintiff alleges "[s]ystematic repetition of an error" or "frequent errors that favor a particular class of litigants".  Shepard v. Weldon Mediation Servs., Inc., 794 F. Supp 2d 1173, 1180 (W.D. Wash. 2011).  Here, there is no allegation that the IHA has a policy and practice of refusing to consider legal arguments that tenants make at grievance hearings, including claims under the FHA, ADA, and Rehabilitation Act.  Instead, the Plaintiffs contend that this particular hearing officer, in their particular hearing, failed to properly apply the law.

Moreover, the fact that Levitt credited the testimony of other witnesses over that of the Plaintiffs and failed to include the Plaintiffs' arguments in his written decision does not render him a biased decisionmaker.  "An opportunity to be heard certainly does not mean that the investigator or fact-finder must believe or even include in his findings the submissions of all parties."  Kraebel v. Comm'r of New York State Div. of Hous. & Cmty. Renewal, No. 93-CV-4344, 2000 WL 91930, at *15 (S.D.N.Y. Jan. 26, 2000) (internal quotation marks and citation omitted).  Thus, the Court finds that the Plaintiffs have failed to show a likelihood of success on the merits of their Section 1983 due process claim to warrant injunctive relief.  See Xue Ming

35

<u>Zheng</u>, 2010 WL 3910480, at *4 ("There are no allegations of any improper conduct, inadequate procedures or bias. Plaintiff's allegations are clearly not nearly enough under the Due Process Clause to sustain a constitutional claim.").

### ii. As to the Plaintiffs' Section 1983 Claim Based Upon Violation of Federal Laws

The Plaintiffs also bring their Section 1983 cause of action based in part upon violations of the United States Housing Act, 42 U.S.C § 1437d(k), the FHA, the ADA, and the Rehabilitation Act.  In particular, the Plaintiffs allege that "the defendants acted under color of law, custom or policy in the administration of their duties to deprive plaintiffs of their rights under the [ADA], [FHA], the Rehabilitation Act, 42 U.S.C. 1437d(k) and plaintiffs have a remedy pursuant to 42 U.S.C. § 1983".  Neither party addresses whether there is a likelihood of success on the Plaintiffs' claim that they have a remedy for any alleged violations of these statutes pursuant to Section 1983.  Nevertheless, the Court finds that the Plaintiffs have not shown a likelihood of success on the merits of these claims.

It is true that a Section 1983 claim is not foreclosed by the existence of a state remedy, namely, Article 78, if it alleges the violation of a right secured by a federal statute.  <u>See Vialez v. N.Y. City Hous. Auth.</u>, 783 F. Supp. 109, 124 (S.D.N.Y. 1991) (finding jurisdiction was supported by a Section 1983 claim alleging violations of the Brooke Amendment, 42 U.S.C. § 1437a, because "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked").

However, for the same reasons as are set forth above, the Court finds that there is no likelihood of success on the merits as to whether the Plaintiffs have stated a claim for violation of the United States Housing Act, 42 U.S.C § 1437d(k).  The United States Housing Act mirrors

Goldberg's criteria, requiring HUD regulations to implement an administrative grievance

procedure under which tenants shall:

> (1) be advised of the specific grounds of any proposed adverse public housing
> agency action;
> (2) have an opportunity for a hearing before an impartial party upon timely
> request within any period applicable under subsection (l) of this section;
> (3) have an opportunity to examine any documents or records or regulations
> related to the proposed action;
> (4) be entitled to be represented by another person of their choice at any hearing;
> (5) be entitled to ask questions of witnesses and have others make statements on
> their behalf; and
> (6) be entitled to receive a written decision by the public housing agency on the
> proposed action.

42 U.S.C § 1437d(k).  Moreover, the federal HUD regulations elaborate upon the proper hearing

procedures, in part requiring that "[a] grievance hearing shall be conducted by an impartial

person or persons appointed by the PHA". 24 C.F.R. § 966.55(b)(1).

In the present case, none of the Plaintiffs' allegations sufficiently assert a violation of any

of these requirements.  In particular, the Plaintiffs do not allege that they received an inadequate

notice; nor do they allege that they did not receive an opportunity to be heard; to examine

documents; to be represented by an attorney; or to cross examine witnesses.  Although the

Plaintiffs dispute the findings and rationale of the Decision, the Plaintiffs do not deny that they

received a written decision that contained the reason for their termination.   Furthermore, as set

forth above, the Plaintiffs' assertion that they were not afforded an impartial decisionmaker is

without merit.

Therefore, contrary to the Plaintiffs' contentions, the Court does not find that their

Section 1983 claim premised on violations of the United States Housing Act would afford them a

likelihood of success on the merits.

Furthermore, because the FHA, ADA and the Rehabilitation Act all contain comprehensive remedial schemes, the Court agrees with those courts that have held that, under the provisions of the statutes at issue in this case, a plaintiff cannot assert claims under Section 1983 for the deprivation of rights guaranteed by the FHA, ADA or the Rehabilitation Act.  See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 . . . to vindicate rights created by Title II of the ADA or Section 504 of the Rehabilitation Act."); Credle-Brown v. Conn. Dep't. of Children & Families, No. 04-CV-1167, 2009 WL 1789430, at *1 (D. Conn. June 24, 2009) ("[T]he Court finds that a plaintiff cannot bring a claim under section 1983 where the deprived federal rights are only those rights guaranteed by the ADA."); South Middlesex Opportunity Council, Inc. v. Town of Framingham, No. 07-CV-12018, 2008 WL 4595369, at *15–16 (D. Mass. Sept. 30, 2008) (finding that "the FHA contains a comprehensive enforcement mechanism for the rights cited by the Plaintiffs under [42 U.S.C.] § 3604" and therefore concluding "that the FHA enforcement mechanism forecloses complementary relief through § 1983."); Homebuilders Ass'n of Mississippi, Inc. v. City of Brandon, Miss., No. 07-CV-716, 2009 WL 1635763, at *11 n.3 (S.D. Miss. June 10, 2009) (recognizing the validity of the holding in South Middlesex with respect to parallel claims under § 3604 of the FHA and Section 1983); Bartlett v. N.Y. State Bd. of Law Examiners, 970 F. Supp. 1094, 1144–45 (S.D.N.Y. 1997) aff'd in part and vacated in part on other grounds, 156 F. 3d 321 (2d Cir. 1998), vacated on other grounds, 527 U.S. 1031, 119 S. Ct. 2388, 144 L. Ed. 2d 790 (1999) ("However, it is equally clear that Congress would not have intended that plaintiffs seek redress for violations of their ADA and Rehabilitation Act rights through the vehicle of § 1983. . . . Unquestionably, the ADA and the Rehabilitation Act provide such "sufficiently

comprehensive" remedies for violations of plaintiff's rights that I do not countenance allowing plaintiff to recover under § 1983 as well.") (internal citations omitted).

Thus, the Court finds that the Plaintiffs have not shown a likelihood of success on any of their claims asserted pursuant to Section 1983.

### b.  Whether the Plaintiffs Have Shown a Likelihood of Success on the Merits on their FHA, ADA, and Rehabilitation Act Claims

At the administrative hearing and in their submission to the Court on the instant motion, the Plaintiffs primarily focus on the merits of their claim for a reasonable accommodation under the FHA.  Although the IHA addressed the FHA claim in their submission at the administrative hearing, the IHA's brief on the instant motion focuses solely on the Plaintiffs' likelihood of success on the merits of their ADA and Rehabilitation Act claims.  Regardless of which statute the claim is asserted under, the central issue before the Court is the Plaintiffs' contention that the IHA failed to explore the feasibility of a reasonable accommodation of Tsilimparis's disability before concluding that the continuation of their tenancy would constitute a threat to the safety of other tenants.

Before addressing the merits of the Plaintiffs' claims, the Court addresses the IHA's argument that the doctrine of collateral estoppel precludes the Court from considering anew any issues raised and decided in the administrative hearing, presumably including the FHA claims. Although the Court agrees that the doctrine of collateral estoppel precludes the Plaintiffs from re-litigating factual issues that were necessarily decided, the Court finds that collateral estoppel does not bar the Court from considering the Plaintiffs federal FHA cause of action, or the shared elements between the FHA claim and ADA and Rehabilitation Act claims.

As a general rule, "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to

litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tennessee v. Elliot, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986) (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S. Ct. 1545, 16 L. Ed. 2d 642 (1966)).  In New York, collateral estoppel, or issue preclusion, precludes a party from re-litigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party, whether or not the tribunals or causes of action are the same.  Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984) (emphasis added); N.Y. Site Dev. Corp. v. N.Y. State Dept. of Envtl. Conservation, 217 A.D.2d 699, 630 N.Y.S.2d 335 (2d Dep't 1995).  Collateral estoppel applies if each of the following elements are met:

> (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

NLRB v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir. 1999).  "The party asserting collateral estoppel bears the burden to prove that the issue was decisive to the agency decision while the party opposing collateral estoppel bears the burden to prove lack of a full and fair opportunity to be heard in the administrative action."  Sikri v. Gilmore, No. 97-CV-2367, 1999 WL 156385, at *2 (S.D.N.Y. March 23, 1999) (citing Ryan, 62 N.Y.2d at 500–01).

Here, the Court finds that the Decision cannot be given preclusive effect with respect to the Plaintiffs' FHA claims generally, nor to the majority of the facts underlying their FHA, ADA, and Rehabilitation Act claims.  The IHA took alternative positions at the administrative hearing, arguing both that the IHA was not required to provide a "reasonable accommodation" to Tsilimparis, and that, even assuming they were, no reasonable accommodation was possible.

However, the Decision fails to address the FHA claim, and the Court has no way of knowing whether Levitt rejected the reasonable accommodation request as applicable to the Plaintiffs' case, or whether he made a factual finding that a reasonable accommodation was not possible.

Moreover, it cannot be said that, by finding that Tsilimparis posed a "direct threat", Levitt implicitly "decided" the FHA claim or any of the underlying elements discussed more fully below—for example, whether the Plaintiffs' are disabled; whether there was a causal connection between Tsilimparis's disability and the attack on Collins; and whether a reasonable accommodation was possible or properly considered. For example, although the Decision references the letter from Braddock, Tsilimparis's social worker—which provides information about his bipolar disorder diagnosis and treatment—it merely provides a description of its contents without any reference as to whether or to what extent it was factored into the ultimate decision.

Furthermore, "collateral estoppel is a flexible doctrine which [cannot] be mechanically applied or reduced to a rigid formula." Levich v. Liberty Cent. School Dist., 361 F. Supp. 2d 151, 158–59 (S.D.N.Y. 2004) (citing Gilberg v. Barbieri, 53 N.Y.2d 285, 292, 441 N.Y.S.2d 49, 51, 423 N.E.2d 807, 809 (1981)). "[I]t lies within the discretion of the trial court whether to apply the doctrine of collateral estoppel, and the doctrine need not be applied even if all of the prerequisites to the doctrine have been met". Calhoun ex rel. Children's Rights Initiative, Inc. v. Ilion Cent. School Dist., 90 A.D.3d 1686, 1689, 936 N.Y.S.2d 438, 441 (4th Dep't 2011)

Although the Court agrees that, in general, the Court is bound by Levitt's fact-finding determinations, Levitt did not make any factual findings on the central issues underlying the Plaintiffs' FHA, ADA, or Rehabilitation Act claims. Nor did he actually decide the issue of whether a reasonable accommodation was warranted or possible before terminating the

Plaintiffs' tenancy.  Thus, the Court finds that neither the FHA claims, nor the common elements of the Plaintiffs' ADA and Rehabilitation Act claims, are barred by the doctrine of collateral estoppel.

### i.  Legal Standards for the FHA, ADA, and Rehabilitation Act Claims

The FHA, as amended by the Fair Housing Amendments Act in 1988, makes it illegal to discriminate in housing practices on the basis of a handicap "in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling".  42 U.S.C. § 3604(f)(2)(A).  Pursuant to 42 U.S.C. § 3603, federally assisted public housing authorities such as the IHA are governed by the antidiscrimination prohibitions of 42 U.S.C. § 3604(f).  Although the FHA provides an exception for landlords for providing a reasonable accommodation to a tenant who "constitute[s] a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damages to the property of others", 42 U.S.C. § 3604(f)(9), the fact that a disabled individual committed a violent act does not automatically warrant a finding that they constitute a "direct threat".  Rather, HUD regulations mandate that:

> In determining whether an individual poses a direct threat to the health or safety of others, the agency must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk

24 C.F.R. § 9.131(c)(emphasis added); see also Joint Statement at 4 ("A determination that an individual poses a direct threat must rely on an individualized assessment that is based on reliable objective evidence (e.g., current conduct, or a recent history of overt acts). The assessment must consider (1) the nature, duration, and severity of the risk of injury; (2) the

probability that injury will actually occur; and (3) whether there are any reasonable accommodations that will eliminate the direct threat.").

To state a prima facie case for discrimination based on a failure to reasonably accommodate, a plaintiff must demonstrate that: (1) he suffers from a handicap as defined by the FHAA; (2) the defendant knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. Bentley v. Peace and Quiet Realty 2 LLC, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005) (citing United States v. California Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994)). Once the Plaintiffs have established a prima facie case, it is incumbent upon the IHA "to demonstrate that no 'reasonable accommodation' will eliminate or acceptably minimize the risk [Tsilimparis] poses to other residents . . . before [it] may lawfully evict [them]." Roe v. Sugar River Mills Assocs., MB, 820 F. Supp. 636, 640 (D.N.H. 1993). Indeed, depending on the circumstances, the mere absence of such an effort may be violative of the FHAA.

The ADA, is a comprehensive statute that "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." See Tennessee v. Lane, 541 U.S. 509, 516–17, 124 S. Ct. 1978, 1984, 158 L. Ed. 2d 820 (2004). A housing authority is a "public entity" covered by Title II of the ADA. See 42 U.S.C. § 12131(1). Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

The Rehabilitation Act of 1973, a predecessor to the ADA, was the original vehicle designed to address disability discrimination and "is narrower than the ADA[] in that its provisions apply only to programs receiving federal financial assistance." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

In order to establish a violation under the ADA and Rehabilitation Act, the Plaintiffs must demonstrate that: (1) Tsilimparis is a "qualified individual" with a disability; (2) the IHA is subject to the ADA and the Rehabilitation Act; and (3) that Tsilimparis was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003); Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998). In addition, the Rehabilitation Act requires that the Plaintiffs show that they were denied the benefits "solely by reason" of their disabilities. Pfrommer, 148 F.3d at 82. Here, the IHA does not appear to dispute that, as a federally-funded public housing authority, they are subject to the provisions of the ADA and the Rehabilitation Act.

"The relevant portions of the FHA, ADA, and Section 504 [of the Rehabilitation Act] offer the same guarantee that a covered entity, such as a [public housing authority], must provide reasonable accommodations in order to make the entity's benefits and programs accessible to people with disabilities." Super v. J. D'Amelia & Assocs., LLC, No. 09-CV-831, 2010 WL 3926887, at *3 (D. Conn. Sept. 30, 2010); see also Wisconsin Comm. Svs., Inc. v. City of

44

Milwaukee, 465 F.3d 737, 746 (7th Cir. 2006).  Consequently, "[a]nalysis of a reasonable accommodation claim under the three statutes is treated the same".  Id. (citing Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 & n. 4 (2d Cir. 2003); Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597, 603 (4th Cir. 1997); Siefken v. Vill. of Arlington Heights, 65 F.3d 664, 666 n. 1 (7th Cir. 1995)); see also Blatch ex rel. Clay v. Hernandez, 360 F. Supp. 2d 595, 630 (S.D.N.Y. 2005) ("Because the standards for discrimination against the disabled are interpreted similarly in the Rehabilitation Act, ADA, and FHAA, Plaintiffs' Disability Rights Statutes claims can be analyzed together.").

### ii.  Whether the Plaintiffs are "Disabled"

A person is considered a "qualified individual" with a disability under the FHA, ADA, and Rehabilitation Acts if that individual (1) has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is a person "regarded as having such an impairment." 42 U.S.C. § 12102(2) (ADA); 42 U.S.C. § 3602(h) (FHA).

The IHA contends that the Plaintiffs are unlikely to succeed on the merits of their claims because there is insufficient evidence that Tsilimparis suffers from a handicap because "[t]he only allegations made of such a condition are the self serving claims by the plaintiff's [sic] themselves".  (Defs' Opp. at 4.)  The Court finds this arguments unpersuasive.

Here, the Plaintiffs have submitted affidavits attesting to the nature of their mental disabilities.  While this alone would be insufficient, the Plaintiffs also allege that Sinisgallo is a recipient of SSDI based on her status as a permanently disabled paranoid schizophrenic, and Tsilimparis is a recipient of SSI because his bipolar disorder renders him permanently disabled.

The IHA does not dispute that the Plaintiffs receive SSDI and SSI.  As a general matter, in most cases, individuals who meet the definition of disability for purposes of receiving SSI or SSDI benefits also qualify as disabled under the federal disability statutes.  See Joint Statement at 13 n.10 ("[p]ersons who meet the definition of disability for purposes of receiving . . . Social Security Disability Insurance ... benefits in most cases meet the definition of disability under the Fair Housing Act.") (citing See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 797, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999)); see also Wiesner v. 321 W. 16th St. Assocs., No. 00-CV-1423, 2000 WL 1191075, at *10 (S.D.N.Y. Aug. 22, 2000) ("[Tenant], who suffers from a psychological illness and is entitled to Social Security Disability Income payments, is deemed to be a disabled individual within the meaning of the Fair Housing Act").

Furthermore, the Plaintiffs presented a letter from Braddock, a Licensed Master Social Worker, attesting to the fact that Tsilimparis suffers from bipolar disorder and has been treated for his disorder at the South Shore Family Center Clinic since September of 2008.  The IHA contends that "[t]o the extent that the plaintiff's [sic] rely on an unsworn letter by Merideth Braddock, Licensed Master Social Worker, the court should note that a licensed master social worker can not make or render diagnoses or prognoses".  (Def.'s Opp. at 4.)  However, the Joint Statement specifically provides that, when a housing authority needs "information verifying that the person meets the Act's definition of a disability", such information can be provided by:  (1) proof that the individual is under 65 and receives SSI or SSDI and/or (2) verification by "[a] doctor or *other medical professional*, a peer support group, *a non-medical service agency*, or a reliable third party".  Joint Statement at 12–13 (emphasis added).  Thus, the fact that Braddock cannot "render diagnoses or prognoses" does not in and of itself disqualify or undermine her statements with respect to Tsilimparis's diagnosis and treatment.

46

The Court finds that the fact that the Plaintiffs receive SSDI and SSI based on their mental disabilities; the letter from the social worker attesting to Tsilimparis's bipolar disorder and treatment history; and the Plaintiffs' affidavits attesting to their mental disabilities, constitute sufficient proof of qualifying disabilities under the federal disability statutes for the purposes of this motion.  Thus, the Court finds that the Plaintiffs are likely to prevail on their claim that they are disabled with the meaning of the federal disability statutes.  See Wilson v. Seattle Hous. Auth., No. 09-CV-226, 2010 WL 1945740, at *2 (W.D. Wash. May 13, 2010) (holding that, despite the housing authorities challenge to the plaintiff's proof that she is disabled under the federal disability statutes, for the purposes of preliminary injunction motion, the plaintiff was likely to prevail on showing she was disabled based on:  (1) the plaintiff's "personal declaration concerning the nature of her disabilities"; (2) "the declaration of her social worker"; and (3) "evidence that Plaintiff is receiving SSI disability benefits").

### iii.  Whether the IHA was Aware of the Plaintiffs' Disabilities

Relevant to the Plaintiffs' FHA claim is not only the existence of a disability, but whether the IHA was aware of the disability when making the decision to terminate the tenancy.  The relevant date for the purpose of establishing the IHA's knowledge is not when the IHA sent the initial eviction notice, but when the Plaintiffs are actually evicted.  See Radecki v. Joura, 114 F.3d 115, 116 (8th Cir. 1997) ("In assessing whether and when defendants knew of Radecki's handicap, the court should have considered the date Radecki was actually evicted (December 16), as the FHA provides that unlawful discrimination occurs when a dwelling is 'den[ied]" to a renter because of that renter's handicap.'") (citing 42 U.S.C. § 3604(f)(1)(A)).  "As a general rule, therefore, a 'reasonable accommodation' defense is available at any time before a judgment of possession has been entered, if the other requirements of the defense are met."  Douglas v.

47

Kriegsfeld Corp., 884 A.2d 1109, 1121 (D.C. 2005).  Here, the IHA's decision to terminate the Plaintiffs' became binding when it commenced the summary holdover proceeding because, as previously discussed, the Plaintiffs' were no longer entitled to contest the substantive grounds for the IHA's decision.

The record reflects that the IHA had knowledge of the Plaintiffs' disabilities prior to commencing the summary holdover proceeding.  First, courts have held that, because a housing authority is aware of the source of a public housing tenant's income, a housing authority is on notice of a tenant's disability when they are recipients of SSI or SSDI.  See Boston Hous. Auth. v. Bridgewaters, 452 Mass. 833, 845, 898 N.E.2d 848, 857–58 (Mass. 2009).  However, even if the IHA was not aware of the Plaintiffs' disabilities prior to the hearing, the Plaintiffs informed the hearing officer of the existence of their disabilities and their request for a reasonable accommodation during the hearing and in their post-hearing submissions.  The IHA is charged with that same knowledge because it has the power to overturn a hearing officer's decision if it is contrary to HUD regulations or "applicable Federal, State or local law".  24 C.F.R. § 966.57(b)(2).

Thus, the Plaintiffs are likely to prevail on their claim that the IHA was aware of the Plaintiffs purported disabilities prior to the commencement of the eviction proceeding.

### iv.  Whether there is a Causal Connection Between Tsilimparis's Disability and the Attack on Collins

In addition to being classified as "disabled" under the statutes, the FHA, ADA, and Rehabilitation Act all require a causal nexus between the plaintiff's disability and the underlying basis for terminating the tenancy before the duty to consider a reasonable accommodation arises.  Thus, for the Plaintiffs to prevail, they must establish that the attack on Collins is traceable to the alleged handicap of Tsilimparis.

To determine whether a plaintiff has shown that a reasonable accommodation "may be necessary" to afford a plaintiff an equal opportunity to use and enjoy a dwelling under the FHA, courts look to whether "there is a causal link between the disability for which the accommodation is requested and the misconduct that is the subject of the eviction or other challenged action."  Boston Hous. Auth. v. Bridgewaters, 452 Mass. 833, 848, 898 N.E.2d 848, 859–60 (Mass. 2009); Evans v. UDR, Inc., 644 F. Supp. 2d 675, 690 (E.D.N.C. 2009) ("In order for an accommodation to be deemed "necessary," there must be some causal connection between the proposed accommodation and the equal opportunity to be afforded the person with a disability.").

To establish a reasonable accommodation claim under the ADA and the Rehabilitation Act, the Plaintiffs must show that their tenancy was terminated "by reason of [a] disability" by establishing that, but for Tsilimparis's mental illness, he would not have needed a reasonable accommodation to the otherwise neutral "direct threat" policy, and therefore the Plaintiffs' tenancy would not have been terminated.  Super v. J. D'Amelia & Assocs., LLC, No. 09-CV-831, 2010 WL 3926887, at *10 (D. Conn. Sept. 30, 2010) (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 277 (2d Cir. 2003)).  "Framed this way, the onus of the reasonable accommodation analysis is not the defendants' purpose in terminating [the Plaintiffs' tenancy], but whether [Tsilimparis] was unable to comply with the defendants' neutral policy and [the Plaintiffs' tenancy was terminated] because of [his] disability."  Id.

The IHA contends that the Plaintiffs' tenancy was "not terminated because of any alleged disability", but rather because Tsilimparis "in an unprovoked attack, struck a neighbor . . .". (Def.'s Opp. at 5.)  The Plaintiffs dispute whether the attack was "unprovoked".  However, as previously stated, Levitt made a factual finding in the Decision that the attack was

"unprovoked".  As this issue was "actually decided" in the Decision, it was the Plaintiffs' burden to show that collateral estoppel should not apply because they did not have a full and fair opportunity to litigate whether the attack was "unprovoked".  As with the Plaintiffs due process claim, a disagreement with a factual finding is not equivalent to the denial of a "full and fair opportunity" to litigate the issue.  The Plaintiffs, who were represented by counsel, had an opportunity to present and cross-examine witnesses, submit evidence, and provide Levitt with post-hearing submissions.  The Plaintiffs have failed to meet their burden and therefore they are collaterally estopped from re-litigating Levitt's factual finding that the attack was "unprovoked".  To the extent the Plaintiffs disagree with Levitt's standard of review or credibility determinations, that can only be challenged in an Article 78 proceeding.

Nevertheless, the Plaintiffs do not now—and did not at the administrative hearing—solely rely on the question of whether the attack was provoked to support a causal link.  Rather, the Plaintiffs also rely on an inference created by the letter from Braddock stating that Tsilimparis's medication was adjusted the day after the attack on Collins  They also rely on the fact that, from the date that his medication was readjusted, until the date of the hearing—more than six months—and even until the present—more than one year later—no further incidents have occurred.  Furthermore, the Plaintiffs argued in their supplemental submission in the administrative hearing, and at the hearing before this Court, that Collins continues to provoke Tsilimparis—a fact the IHA strongly disputes—further demonstrating that the attack was related to his disability, and not any sort of provocation.  However, because the element of provocation is not necessary to a finding of a causal connection, the Court does not need to resolve this dispute to render a decision on the instant motion.

Although it is a close question, the Court finds that, for the purposes of this motion, the

Plaintiffs have shown a causal connection between Tsilimparis's disability and the attack on

Collins so that the IHA was required to attempt to reasonably accommodate the Plaintiffs prior to

commencing the summary holdover proceeding.

### v. Whether the Plaintiffs Proposed, and the IHA Considered, a "Reasonable Accommodation"

Assuming the Plaintiffs are able to show that they are disabled within the meaning of the

statutes, and that the attack on Collins was caused by Tsilimparis's disability, the Plaintiffs must

also show that the IHA failed to provide or consider a reasonable accommodation in order to

demonstrate a likelihood of success on the merits of their claims under the federal disability

statutes.  Here, the Plaintiffs assert that the IHA's failure or refusal to accommodate

Tsilimparis's disability by providing a probationary period, which the Plaintiffs believe would be

a reasonable accommodation, violates the FHA, ADA and the Rehabilitation Act.

The Second Circuit has defined a "reasonable accommodation" as "one that gives the

otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services

sought." Henrietta D., 331 F.3d at 282 (quoting Alexander v. Choate, 469 U.S. 287, 301, 105 S.

Ct. 712, 83 L. Ed. 2d 661 (1985)). "A defendant must incur reasonable costs and take modest,

affirmative steps to accommodate the handicapped as long as the accommodations sought do not

pose an undue hardship or a substantial burden."  Tsombanidis, 352 F.3d at 578.

Where, as here, the disabled plaintiff committed an act of violence in the housing project,

the plaintiff "faces a more difficult burden of establishing  that [the] request is reasonable".

Super, 2010 WL 3926887, at *5.  "[S]uch adjustments are ordinarily not *reasonable*

accommodations, and therefore are required only in unusual circumstances."  Id. (quoting

Giebler v. M & B Assocs., 343 F.3d 1143, 1154 (9th Cir.2003) (emphasis in original)).

51

Congress did not "intend[] accommodations to be attempted or implemented if there is no reasonable expectation that the accommodation will protect the other tenants". Arnold Murray Const., L.L.C. v. Hicks, 621 N.W.2d 171, 175 (S.D. 2001). However, in order to comply with the relevant statutes "if a handicapped tenant is a direct threat to the health and safety of other tenants, the landlord is obligated to either reasonably accommodate the tenant's handicap or show that no reasonable accommodation will eliminate or acceptably minimize the risk posed by the handicapped tenant". Id. "When the landlord shows that no reasonable accommodation will curtail the risk, its duty to accommodate ceases." Id. Whether a requested accommodation is required by law is "highly fact-specific, requiring case-by-case determination." United States v. California Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994); Lyons v. Legal Aid Society, 68 F.3d 1512, 1516 (2d Cir. 1995).

Here, the Plaintiffs' proposed accommodation is that the IHA grant them a probationary period to show that the adjustments to Tsilimparis's medication and treatment would prevent him from constituting a direct threat to the safety of his neighbors. The Plaintiffs not only expressly requested this accommodation during the hearing, but by "asserti[ng] at [the hearing] that he was mentally disabled and had been successfully treated following the assault, this amounted to a request for an accommodation." Boston Hous. Auth. v. Bridgewaters, 452 Mass. 833, 847, 898 N.E.2d 848, 859 (Mass. 2009). This type of "second chance" accommodation was suggested in the Joint Statement, and has been adopted as a reasonable accommodation by a number of courts. See Joint Statement at 5–6 (providing an example where a landlord seeks to evict a mentally disabled tenant who has threatened other tenants with a baseball bat, and the suggested reasonable accommodation to the landlord's "no threats" policy is an assurance by the tenant's attorney that the tenant "will receive appropriate counseling and periodic medication monitoring

52

so that he will no longer pose a direct threat during his tenancy"); <u>Super</u>, 2010 WL 3926887, at

*6 ("Courts have accepted a second chance—that is, a tenant's opportunity to remain in her

dwelling notwithstanding the landlord's disability-neutral justification for eviction—as an

accommodation, provided that it is coupled with the tenant seeking assistance for her

disability."); <u>Bridgewaters</u>, 452 Mass. at 847, 850 n.26 (holding that tenant's request for housing

authority to "depart from its policy of evicting tenants for engaging in a violent act, and reinstate

his tenancy" constituted an accommodation under the FHA).  It is undisputed that the IHA has

offered no accommodation to the Plaintiffs, nor explained why the proposed accommodation is

not reasonable under the circumstances of this case.

 However, there is some evidence that the IHA undertook the requisite analysis for

determining whether a reasonable accommodation was possible so that Tsilimparis would not

constitute a "direct threat".  In particular, in its submission at the administrative hearing, the

IHA, although predominantly arguing it was not required to provide or consider any reasonable

accommodation, set forth its individualized assessment as follows:

> (1) the nature, duration and severity of the risk of injury is great-as
> stated above it can not be disputed that Mr. Tsilimparis struck Mr.
> Collins three times with sufficient force to be heard within a
> nearby apartment.  (2) the probability that injury will actually
> occur is 100%–injury has already occurred; (3) there are no
> reasonable accommodation that will eliminate the direct threat-
> short of assigning twenty four security to stand guard over Mr.
> Tsilimparis there is no manner in which the Housing Authority can
> prevent another attack.

(Compl., Ex. E.)  Although the IHA undertook an assessment, it is unclear whether this

assessment satisfies the HUD regulations or sufficiently alleviates its duty to accommodate the

Plaintiffs under the federal disability statutes.  Absent from the record is the IHA's basis for

concluding that the only possible accommodation would be a twenty-four hour security guard, or

whether this determination was made in reliance "on current medical knowledge or on the best available objective evidence". 24 C.F.R. § 9.131(c). By contrast, the Plaintiffs have submitted evidence that the proposed accommodation has been found to be reasonable by HUD, the Department of Justice, and other courts; that the medication and treatment of Tsilimparis were adjusted the day after the assault; and that Tsilimparis has not engaged in any further acts of violence since the adjustment to his medication. Thus, for the purposes of this motion, the Plaintiffs have satisfied their burden of showing that they proposed a reasonable accommodation, and the IHA has failed to sufficiently show why the proposed accommodation, or any other accommodation, would not have been reasonable under the circumstances of this case.

Accordingly, the Court finds that the Plaintiffs' have shown a likelihood of success on the merits of their claims under the FHA, ADA, and Rehabilitation Act for the purposes of obtaining preliminary injunctive relief.

### 3. Balance of the Equities

Based on the Court's review of New York law, the inquiry of the district court in the pending eviction proceeding is confined to whether the Plaintiffs received "limited" due process before the IHA terminated their lease—namely, whether the Plaintiffs were provided with notice and an opportunity to be heard at the administrative hearing. There is no dispute that the Plaintiffs were provided with notice and opportunity to be heard. Thus, if the Court does not enjoin the pending eviction proceeding, the threat that the Plaintiffs will be evicted and rendered homeless is very high. The Plaintiffs could reapply for entrance into the Program, or for other federal or state-funded housing assistance programs. However, during the application process— which could take a significant amount of time—the Plaintiffs would still remain homeless.

In the context of discussing the propriety of enjoining state court proceedings in light of a challenge to the due process afforded public housing tenants in the eviction procedure, the Fourth Circuit in <u>Caulder v. Durham Housing Authority</u>, 433 F.2d 998 (4th Cir. 1970) stated as follows:

> The program of subsidized low-cost public housing has been undertaken to serve a variety of state interests.  Should an eligible tenant be wrongfully evicted, some frustration of these interests will result.  The impact on the tenant is no less. Not only is he, by definition, one of a class who cannot afford acceptable housing so that he is 'condemned to suffer grievous loss,' but should it be subsequently determined that his eviction was improper the wrong cannot be speedily made right because of the demand for low-cost public housing and the likelihood that the space from which he was evicted will be occupied by others.  In short, both governmental and individual interests are furthered by affording due process in the eviction procedure.

<u>Id.</u> at 1003.  The Court finds that these considerations are no less applicable when there is a challenge to a housing authority's compliance with the federal disability statutes in the eviction process.  Moreover, because landlords and housing assistance programs can deny housing or assistance to individuals who pose a "direct threat" to the safety of other tenants, the resolution of this action would necessarily impact any of the Plaintiffs' future tenancy or housing assistance applications.

Ultimately, the Plaintiffs have sufficiently shown a likelihood of success on the merits of their federal disability claims to warrant injunctive relief.  Federal law allows for reasonable accommodations of individuals with mental disabilities and has set forth procedures and guidance to assist housing authorities such as the IHA with determining whether and to what extent an existing tenant is entitled to such an accommodation.  The IHA cannot disregard or pay lip-service to federal law before terminating the tenancy of a mentally disabled individual, and

the IHA has failed to show that it gave any serious consideration to the Plaintiffs' rights under the federal disability statutes before initiating the summary holdover proceeding.

The Court understands that the IHA is required to consider the safety of all its public housing tenants, and that, if the Plaintiffs ultimately do not prevail, there is a concern that the safety of those tenants will be comprised if the Court does not allow it to proceed with the eviction action.   However, the IHA does not dispute that, in the one year after the attack on Collins, neither plaintiff has acted in a violent manner towards any of the tenants.  Thus, in this case, the Court finds that the likelihood that the Plaintiffs will prevail on their federal disability claims, and the threat of irreparable injury to the Plaintiffs outweighs the IHA's concern. Accordingly, the Court finds that a balance of the equities favors granting the Plaintiffs' motion for preliminary injunctive relief.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, the Plaintiffs' motion for a preliminary injunction is granted, and it is further,

**ORDERED**, that the IHA is enjoined from proceeding with the state court summary holdover action pending the outcome of the instant case.


**SO ORDERED.**
Dated: Central Islip, New York
May 23, 2012


                                        _/s/ Arthur D. Spatt_____
                                         ARTHUR D. SPATT
                                        United States District Judge